```
          UNITED STATES DISTRICT COURT
             DISTRICT OF MINNESOTA
          Criminal No. 14-253(DSD/SER)
```

United States of America,

       Plaintiff,

v.                                      **ORDER**

Jermaine Dushun Travis,

       Defendant.

This matter is before the court upon the objections by the government and defendant Jermaine Dushun Travis to the January 9, 2015, report and recommendation of United States Magistrate Judge Steven E. Rau. Based on a review of the file, record, and proceedings herein, and for the following reasons, the court overrules the objections.

**BACKGROUND**

The background of this matter is fully set forth in the report and recommendation, and the court recites only those facts necessary to resolve the current objections. On June 4, 2014, Bloomington Police Department Officer Ryan Arbuckle pulled Travis over for traffic violations pertaining to tinted windows, windshield obstructions, and the improper use of a turn signal. ECF No. 47, at 5-14. When Arbuckle approached the vehicle, Travis rolled down the window. Id. at 12-13. Arbuckle smelled a strong odor of marijuana coming from the vehicle, and he called for

backup. Id. at 13-16, 53. Arbuckle asked Travis about the smell of marijuana, and Arbuckle stated that he had a "sack of weed." Id. at 16-17.

Arbuckle asked Travis to step out of the vehicle, if he had anything illegal on him, and if he could search his pockets. Id. at 17. Travis agreed. Id. at 17-18. Arbuckle conducted a pat-down and felt a bulge in Travis's front pocket. Id. at 18-19. Arbuckle removed a baggie from the pocket, handcuffed Travis, and asked if crack was inside the baggie. Id. at 19. Travis responded that "there's a firearm up under the seat." Id. at 19-20. Arbuckle also recovered a hotel keycard from Travis's person and, after conducting a search of the vehicle, a handgun. Id. at 20-21. Travis was processed at the Bloomington jail. Id. at 22.

Arbuckle then proceeded to the hotel room traced to the keycard and knocked on the door. Id. at 22-23. He entered the room and "froze" it while another officer obtained a search warrant. Id. at 24, 56. After the warrant was obtained, Arbuckle and Detective Melser searched the room and found ammunition, narcotics scales, plastic baggies, and heroin. Id. at 26. Before the search, a woman entered the room and was detained. Id. at 25. The next day, Melser interviewed Travis at the Bloomington jail. Melser talked with Travis for a little over five minutes before reading his Miranda rights. Travis agreed to waive his Miranda rights and talk to Melser.

On January 9, 2015, the magistrate judge recommended that Travis's motions to suppress physical evidence be denied, and his motion to suppress statements be granted in part.  Travis and the government timely object.

**DISCUSSION**

The court reviews the report and recommendation of the magistrate judge de novo.  28 U.S.C. § 636(b)(1)(C); Fed. R. Crim. P. 59(b); D. Minn. LR 72.2(b).

**I.   Reasonable Suspicion for Traffic Stop**

Travis first objects to the determination that Arbuckle had reasonable suspicion to perform the traffic stop.  "A traffic stop must be supported by reasonable suspicion or probable cause." United States v. Hollins, 685 F.3d 703, 706 (8th Cir. 2012) (internal quotation marks omitted).  "Any traffic violation, however minor, provides probable cause for a traffic stop." United States v. Adler, 590 F.3d 581, 583 (8th Cir. 2009) (internal quotation marks omitted).  Arbuckle pulled Travis over based on three traffic violations.  See Minn. Stat. §§ 169.19, subd. 5 (requiring a turn signal to be activated no less than 100 feet before the turn); 169.71, subd. 1 (prohibiting objects suspended between the driver and windshield); 169.71, subd. 4 (prohibiting tinted windows with a light transmittance of less than 50 percent).

Travis first argues that Arbuckle testified at the suppression hearing that he was not aware at the time if his car was a sedan or SUV, and as a result, could not determine if it was exempt from Minnesota's window-tint statute. See Minn. Stat. § 169.71, subd. 4(b)(3). Similarly, Travis argues that Arbuckle could not determine whether the obstruction hanging from his rearview mirror was exempt under Minnesota law. See Minn. Stat. § 169.71, subd. 1(a)(2). These arguments are unavailing, because Arbuckle testified at the evidentiary hearing that he believed the car was a sedan and the obstruction was flowers. ECF No. 47, at 8, 46. The magistrate judge found this testimony credible. Moreover, even if Arbuckle was mistaken as to the exemptions, those mistakes are objectively reasonable. See United States v. Sanders, 196 F.3d 910, 913 (8th Cir. 1999) (noting that a police officer is "justified in making the stop if he objectively had a reasonable basis for believing that the driver has breached a traffic law." (Internal quotation marks omitted)).

Travis next argues that Arbuckle did not have reasonable suspicion to pull him over based on a turn signal violation, because Arbuckle did not testify at the evidentiary hearing that he observed the vehicle moving while within 100 feet of the stop sign. The court finds this argument irrelevant, because Arbuckle testified that the turn signal was not activated when the vehicle

was stopped at the intersection.[1]  ECF No. 47, at 9, 37-38.  As a result, the court finds that Arbuckle had reasonable suspicion to pull over Travis, and the objections regarding the traffic stop are overruled.

Travis next argues that the stop was initiated based on pretext, noting that Arbuckle traced the license plates on the car to a different owner and failed to immediately inquire about the tinted windows.  It is immaterial whether Arbuckle had an ulterior motive, because the stop was based on probable cause.  See United States v. Bell, 86 F.3d 820, 822 (8th Cir. 1996) ("If the officer has probable cause to stop the violator, the stop is objectively reasonable and any ulterior motivation on the officer's part is irrelevant.").  As a result, the court overrules this portion of the objections.

**II. Suppression of Statement Regarding the "Sack of Weed"**

Travis next argues that his statement regarding the "sack of weed" should be suppressed because he was in custody and had not been apprised of his Miranda rights.  "Officers must inform suspects of their Miranda rights before subjecting them to custodial interrogations." United States v. Sanchez, 676 F.3d 627, 630 (8th Cir. 2012).  In determining whether a person is in custody for purposes of Miranda, "[t]he analysis depends upon a review of

---

[1] Travis further argues that Minnesota's turn signal statute pertains only to moving vehicles and not vehicles stopped at an intersection.  The court finds no support for this argument.

the totality of the circumstances, and [t]he ultimate test is whether a reasonable person in that position would have felt free to end the interview." Sanchez, 676 F.3d at 630-31 (internal quotation marks omitted).

Travis objects to the magistrate judge's determination that he was not in custody at the time of the statement because the traffic stop was extended on reasonable suspicion of unlawful activity. When "a motorist is seized during a traffic stop, Miranda warnings are not required where the motorist is not subjected to the functional equivalent of a formal arrest." United States v. Morse, 569 F.3d 882, 884 (8th Cir. 2009). Typically, "persons temporarily detained pursuant to such stops are not 'in custody' for the purposes of Miranda." Berkemer v. McCarty, 468 U.S. 420, 440 (1984). Moreover, "[i]f, during a traffic stop, an officer develops a reasonable, articulable suspicion that a vehicle is carrying contraband, he has justification for a greater intrusion unrelated to the traffic offense." United States v. Bloomfield, 40 F.3d 910, 918 (8th Cir. 1990) (internal quotation marks omitted); see also United States v. Boucher, 909 F.2d 1170, 1174 (8th Cir. 1990) (holding that an officer's pre-Miranda questioning was reasonable where the officer was aware that a gun was in the vehicle).

The court agrees with the determination that Travis was not in custody at the time he made the statement about marijuana. As

noted by the magistrate judge, Arbuckle questioned Travis while he was seated in the vehicle, and the question was prompted by a noticeable odor of marijuana. See Arizona v. Johnson, 555 U.S. 323, 333 (2009) ("An officer's inquiries into matters unrelated to the justification for the traffic stop ... do not convert the encounter into something other than a lawful seizure, so long as those inquiries do not measurably extend the duration fo the stop."). Moreover, the court agrees with the magistrate judge that Travis was not in custody simply because Arbuckle called for backup, as this did not create a level of restraint beyond that which is ordinarily associated with a typical traffic stop. See Berkemer, 468 U.S. at 440. As a result, suppression of the statement is not warranted, and the court overrules this portion of the objections.

**III.  Suppression of Items Found in Travis's Pockets**

Travis next objects to the determination that the heroine and hotel key card found during the pat-down and pocket search should not be suppressed. Specifically, Travis argues that he did not voluntarily consent to the pat down and search of his pockets, and even if he did, that this consent did not purge the taint of the illegal pat-down and pocket search.[2] To show voluntary consent, "the government must show that a reasonable person would have

---

[2] The magistrate judge assumed that the pat-down and pocket search were illegal. The court will do the same.

7

believed that the subject of a search gave consent that was the product of an essentially free and unconstrained choice, and that the subject comprehended the choice that he or she was making." United States v. Sanders, 424 F.3d 768, 773 (8th Cir. 2005) (internal quotation marks omitted).[3]  The court pays "particular attention to the characteristics of the person given consent and the and to the encounter from which the consent arose." United States v. Sanchez, 156 F.3d 875, 879 (8th Cir. 1998).  The court considers:

> (1) [defendant's] age; (2) his general intelligence and education; (3) whether he was intoxicated at the time; (4) whether he was informed of his Miranda rights before consenting; (5) whether any previous arrests would have informed him of his rights and protections; (6) the length of time he was detained; (7) whether the officers acted in a threatening manner; (8) whether the police made any promises or misrepresentations; (9) whether the police had [defendant] in custody or under arrest at the time; (10) whether he consented in public; and (11) whether [defendant] was silent during the search.

United States v. Johnson, 619 F.3d 910, 918 (8th Cir. 2010).

Here, the factors weigh in favor of a finding that Travis voluntarily consented to the pat-down and pocket search.  As noted by the magistrate judge, Travis is an adult without known mental difficulties, he has previous experience with the legal system, he was not under the influence of drugs at the time, the length of

---

[3] As an initial matter, Travis argues broadly that one cannot consent to an illegal search.  The court disagrees.  See United States v. Becker, 333 F.3d 858, 862 (8th Cir. 2003) (determining whether consent to a search, preceded by illegal police activity, purged the taint of an illegal detention).

time between when he exited the vehicle and when Arbuckle asked to search his pockets was relatively short, he was not threatened, he was searched in public, and he did not object at the time of the pat-down and search.  Although Travis argues that he was handcuffed, "being handcuffed does not preclude a finding of voluntariness." United States v. Comstock, 531 F.3d 667, 677 (8th Cir. 2008) (internal quotation marks omitted).

Travis next argues that, even if his consent was voluntary, it did not purge the taint of the unlawful pat-down and pocket search. The court considers "(1) the temporal proximity between the Fourth Amendment violation and the grant of consent to search; (2) the presence of any intervening circumstances; and (3) the purpose and flagrancy of the officer's Fourth Amendment violation." United States v. Barnum, 564 F.3d 964, 971 (8th Cir. 2009).  The last factor is "the most important factor because it is directly tied to the purpose of the exclusionary rule - deterring police misconduct." United States v. Herrera-Gonzalez, 474 F.3d 1105, 1111 (8th Cir. 2007) (internal quotation marks omitted). The magistrate judge found that the temporal proximity between the consent and search was short and that there were no intervening circumstances warranting suppression. Nevertheless, the magistrate judge determined that the purpose behind the pat-down and pocket search - officer safety - was legitimate and that Arbuckle's conduct was not flagrant because it did not extend beyond the scope

of searching for weapons. The court agrees with this determination. See United States v. Ramos, 42 F.3d 1160, 1164 (8th Cir. 1994) (holding that consent was sufficient where the "arrest and consent were close in time, and there were no intervening circumstances, but the officer's conduct was in good faith, and the violation of Terry was not flagrant").

Travis also objects to the determination that the heroin and key card would have been inevitably discovered. "For the inevitable discovery doctrine to apply, there must have been a reasonable probability the evidence would have been discovered in the absence of police misconduct, and the police must have been pursuing a substantial, alternative line of investigation." United States v. Alvarez-Gonzalez, 319 F.3d 1070, 1072 (8th Cir. 2003). Here, the magistrate judge determined that the heroin and key card would have been found when Travis was arrested for being a felon in possession of a firearm. Specifically, officers would have had probable cause to search the vehicle based on the marijuana odor, and upon finding the firearm Arbuckle would have had probable cause to arrest Travis. A search incident to that arrest would have revealed the heroin and key card. The court agrees with this reasoning. As a result, the magistrate judge correctly found that suppression of the heroin and key card is not warranted, and this portion of the objections is overruled.

**IV.   Suppression of Statement Regarding Firearm Possession**

Travis next argues that his statement to Arbuckle that there was a firearm under the seat of the car should be suppressed. Specifically, Travis objects to the determination that the statement was not the product of custodial interrogation.[4] "An interrogation includes both direct questions and words or actions that officers should know are reasonably likely to elicit an incriminating response from the subject." United States v. McGlothen, 556 F.3d 698, 701 (8th Cir. 2009) (internal quotation marks omitted). The magistrate judge noted that, to the extent Travis was responding to a question by Arbuckle, the question pertained to whether Travis had crack on him. The court finds, that this questions are not likely to elicit an incriminating response specific to firearms.[5] See United States v. Crisolis-Gonzalez, 742 F.3d 830, 836-37 (8th Cir. 2014) (finding no interrogation where an inquiry into immigration status was "wholly unrelated to [defendant's] volunteered statement that he had a gun under his mattress"). As a result, the magistrate judge correctly determined that the statement regarding the firearm should not be suppressed, and the objection is overruled.

---

[4] Travis does not address the magistrate judge's finding that the statement was voluntary.

[5] Moreover, the court does not find, as Travis argues, that his statement was in response to previous questioning about whether he had marijuana or possessed anything "sharp."

**V.     Vehicle Search**

Travis next argues that there was no probable cause to search the vehicle. Police may "conduct a warrantless search of a vehicle and containers within the vehicle whenever probable cause exists." United States v. Sample, 136 F.3d 562, 564 (8th Cir. 1998). "Probable cause exists where there is a fair probability that contraband or evidence of a crime will be found in a particular place." United States v. Donnelly, 475 F.3d 946, 954 (8th Cir. 2007) (internal quotation marks omitted). "In such circumstances, the police may search every part of the car and its contents that may conceal the object of the search." United States v. Payne, 119 F.3d 637, 642 (8th Cir. 1997).

The court finds that probable cause existed to search the car. As noted by the magistrate judge, Arbuckle smelled marijuana, and when Arbuckle asked about the smell Travis stated there was marijuana in the car. See United States v. Peltier, 217 F.3d 608, 610 (8th Cir. 2000) ("[T]he smell of marijuana gave the deputy probable cause to search [defendant's] truck for drugs."). Although Travis argues that no exceptions regarding safety and evidence destruction were present, these exceptions are not necessary to justify a search where "there is a fair probability that contraband or evidence of a crime will be found in a

particular place." Donnelly, 475 F.3d at 954. As a result, the magistrate judge properly found that probable cause existed to search the vehicle, and the objection is overruled.

**VI. Suppression of Evidence from Search of Hotel Room**

Travis next objects to the determination that the evidence retrieved from the hotel room should not be suppressed. Specifically, Travis argues that the search warrant affidavit was insufficient to establish probable cause because it included all of the evidence that Travis has thus far argued should be suppressed. Because those previous objections have been overruled, the court agrees with the magistrate judge that the information included in the affidavit was sufficient to show probable cause. As a result, suppression is not warranted.

Even if the warrants were defective, however, the evidence would still be admissible under the good-faith exception to the exclusionary rule. See United States v. Leon, 468 U.S. 897, 920-21 (1984). "Under the Leon good-faith exception, disputed evidence will be admitted if it was objectively reasonable for the officer executing a search warrant to have relied in good faith on the judge's determination that there was probable cause to issue the warrant." United States v. Hager, 710 F.3d 830, 837 (8th Cir. 2013) (citation and internal quotation marks omitted).

> The good-faith exception does not apply in four circumstances: (1) when the issuing judge is misled by information in the affidavit the affiant knows or should know is false; (2) when the issuing judge completely

13

abandons his judicial role; (3) when the affidavit includes so little indicia of probable cause that official belief in its existence is entirely unreasonable; and (4) when the warrant is so facially deficient that the executing officer cannot reasonably presume it to be valid.

United States v. Hessman, 369 F.3d 1016, 1020 (8th Cir. 2004) (citations omitted). Travis cannot demonstrate any of these circumstances. As a result, suppression is not warranted.[6]

## VII. Statements Made in Jail

The government objects to the determination that the post-Miranda statements made by Travis while in jail should be suppressed.[7] Specifically, the government argues that it met its burden to show that Detective Melser's failure to initially provide Miranda warnings was not part of a deliberate attempt to elicit an incriminating response in violation of Miranda. The magistrate judge recommended that the statements be suppressed under United States v. Ollie, 442 F.3d 1135 (8th Cir. 2006). In Ollie, the

---

[6] Travis also argues that any evidence preserved as a result of freezing the hotel room before obtaining a warrant should be suppressed. Because the warrant was supported by probable cause, the court disagrees. See Segura v. United States, 468 U.S. 796, 798 (1984) ("[W]here officers, having probable cause, enter premises, and with probable cause ... secure the premises from within to preserve the status quo while others, in good faith, are in the process of obtaining a search warrant, they do not violate the Fourth Amendment's proscription against unreasonable seizures.").

[7] The government also asks that the court not adopt footnote 31 of the report and recommendation, which it argues accuses Melser of perjury. Because credibility determinations are not necessary at this point, and because Melser's testimony is subject to interpretation, the court will not adopt the footnote.

Eighth Circuit addressed the Supreme Court's decision in <u>Missouri v. Seibert</u>, 542 U.S. 600 (2004), which considered whether a second, repeated statement made after a <u>Miranda</u> warning is admissible when the first statement was made pre-<u>Miranda</u> and produced a confession. <u>Seibert</u>, 542 U.S. at 604.

Statements made post-warning should be suppressed "only where the police intentionally used the two-step interrogation technique to render <u>Miranda</u> warnings ineffective." <u>Ollie</u>, 442 F.3d at 1142. The government must prove, "by a preponderance of the evidence, that the officer's failure to provide warnings at the outset of questioning was not part of a deliberate attempt to circumvent <u>Miranda</u>." <u>Id.</u> at 1142-43. The magistrate judge found that the government did not meet its burden.

The government first argues that Melser's comments pre-<u>Miranda</u> did not constitute interrogation. The court disagrees. The government argues that Melser was merely apprising Travis of the evidence and potential charges against him. <u>See</u> <u>United States v. Wipf</u>, 397 F.3d 677, 685 (8th Cir. 2005) (finding no interrogation where an officer told the defendant "that he had been arrested for possession of child pornography based on a number of tapes that had been seized from inside his home"); <u>United States v. Briones</u>, 390 F.3d 610, 612 (8th Cir. 2004) (finding no interrogation where an officer told the defendant that the case would "go federal" due to "the quantity of drugs in the car"). The court finds, however,

15

that the conversation went beyond a mere apprisal. As noted by the magistrate judge,[8] Melser informed Travis that his girlfriend had been arrested and is "here right now." Travis responded that she had nothing to do with "it," and proceeded to make inculpatory statements. Melser did not provide a Miranda warning at this time, instead stating that he wants to "clarify everything." The court finds that these comments, when considered with the remainder of the pre-Miranda conversation, were "reasonably likely to elicit an incriminating response" from Travis. McGlothen, 556 F.3d at 701.

The government next argues that Melser did not engage in a deliberate attempt to circumvent Miranda. As noted by the magistrate judge, Travis was in custody when the conversation began, he was clearly a suspect, and the government offered no explanation for why a Miranda warning was not offered at that time. See United States v. Gross, No. 08-254, 2009 WL 430503, at *9 (D. Minn. Feb. 20, 2009) (noting that there was no explanation for why an initial Miranda warning was not given); United States v. Ladoucer, 2007 WL 3051434, at *5 (D. Minn. Oct. 17, 2007) (noting no "unusual, hurried, or exigent circumstances" that might have caused the agent to forget to provide Miranda warnings). Melser told Travis twice that things were not looking good for him, that he had some things to "talk about," that whether charges will be

---

[8] Although the government disagrees with the magistrate judge's characterization of the conversation, the parties do not dispute the magistrate judge's recitation of the statements.

brought depended on how the interview went, and asked how much time Travis had served for gun violation in the past.  Moreover, Melser's comments before and after the Miranda warning pertained to the same subject matter.  See United States v. Sims, No. 13-109, 2013 WL 4199146, at *7 (D. Minn. Aug. 15, 2013) (noting that the "incriminating questions pertaining to the charges brought against [defendant] were asked in both interrogations").  The court agrees that, based on these circumstances, the government has not met its burden to show that Melser did not engage in a two-step interrogation technique to circumvent Miranda.  As a result, the court overrules the objection.

**CONCLUSION**

Accordingly, based on the above, **IT IS HEREBY ORDERED** that:

1.   Defendant's objections [ECF No. 61] to the magistrate judge's report and recommendation are overruled;

2.   The government's objections [ECF No. 63] to the magistrate judge's report and recommendation are overruled; and

3.   The report and recommendation is adopted as set forth above.

Dated:  February 3, 2015

                                            s/David S. Doty
                                            David S. Doty, Judge
                                            United States District Court